281 So.2d 445 (1973)
Eugene John WOLF
v.
STATE of Mississippi.
No. 46988.
Supreme Court of Mississippi
April 27, 1973.
*446 Dempsey M. Levi, Ralph W. Pringle, Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, James W. Haddock and Timmie Hancock, Sp. Asst. Attys. Gen., Jackson, for appellee.
SMITH, Justice:
Eugene John Wolf was tried in the Circuit Court of Jackson County on an indictment charging that he did have in his "possession and produce" a certain narcotic drug. He was convicted and sentenced to serve a term of five years in the penitentiary. He has appealed here.
The record leaves no reasonable doubt that appellant did, in fact, have in his possession and produce the narcotic drug as charged. Among the several grounds assigned for reversal is the overruling of appellant's objection to the indictment that "as the indictment states the cause of action it is twofold and your defendant is not able to understand the charge against him." It is now argued that the indictment charged in one count a felony (producing) and a misdemeanor (possessing) and is, therefore, fatally defective.
The general rule is that it is improper to charge the commission of two different crimes in a single count. Hitt v. State, 217 Miss. 61, 63 So.2d 665 (1953); Clanton v. State, 211 Miss. 568, 52 So.2d 349 (1951); 27 Am.Jur. Indictments and Information § 124 (1940).
In a recent controlled substance case decided by the Court of Appeals of Alabama, in which the one-count indictment charged the defendant with possession of two separate, distinct and different "controlled substances," namely, barbiturates, possession of which is a misdemeanor, and Demerol, possession of which constitutes a felony, the Alabama Court held that such distinct and separate offenses could not be joined in the same count. Brandies v. State, 44 Ala.App. 648, 219 So.2d 404 (1968).
There are certain generally recognized exceptions to the rule. These include such offenses as assault and battery and burglary and larceny. Bradshaw v. State, 192 So.2d 387 (Miss. 1966).
The rationale of the exceptions seems to be that a statement in an indictment of the motive or purpose which prompted the principal criminal action, although it may in itself, if taken alone, charge an offense, is not objectionable, if it is incidental and relates to a description of the principal offense, is not inconsistent with it, and is part of a single transaction.
In Laughter v. State, a Mississippi case, 241 So.2d 641 (Miss. 1970) the Court was confronted with a question of double jeopardy. In Laughter the Court dealt at some length with the "single transaction principle" as it applied to double jeopardy. It appears that Laughter had been indicted for possession of marijuana, and by a separate indictment, for the sale of marijuana. He was tried and convicted on the possession charge and his conviction was affirmed. Following his conviction on the possession charge, Laughter was brought to trial upon the indictment for the sale of the same marijuana. On his motion to quash the indictment in the second case, it was established that the possession, for which he had been convicted previously, and the sale, for which he was to be tried, arose out of the same transaction and that the possession for which he had been convicted was necessarily incidental to the sale.
After an extensive review of the authorities, this Court said:
We are of the opinion that the one transaction principle is sound when properly *447 limited. Since the facts in this case show that the appellant procured the marijuana at the request of Walker for the purpose of sale to Watson, his possession and sale of marijuana constitute one transaction and the possession was only incident to the sale. Under these circumstances possession was a lesser included or constituent offense of the sale and it would be unfair to punish appellant for both offenses (241 So.2d at 644).
The Court pointed out, of course, that if the possession had been distinct, unrelated or not incidental to the sale, or had been upon another occasion, the prosecution would not have been barred.
In West v. State, 49 So.2d 271 (Miss. 1950) the indictment charged that the defendant had in his possession "a still and the integral parts thereof." In deciding that the indictment was not duplicitous in charging in the same count the offense of possession of the still and of possession of the "integral parts of a still," each being a statutory offense, the Court said that the "whole includes its parts... . A different question would have been presented had the allegation been in the disjunctive." In the present case we have concluded that the possession, although a lesser offense in itself, was only incidental to the more serious charge of production of marijuana, and that possession and production were parts of the same transaction.
In the Mississippi "pointing and aiming statutes," it is made a misdemeanor to "intentionally point or aim any gun, pistol, or firearm at or toward another, except in self-defense or in the lawful discharge of official duty." It is also made a misdemeanor, for which a more severe punishment is provided, to "discharge such firearm, so intentionally pointed or aimed, ..." and is then made a felony if, "by such discharge, (the accused) shall maim, kill, or injure another... ." Obviously, the indictment for the felony would not be objectionable although it included words which, if taken alone, would constitute the charge of either or both of the misdemeanors defined by the statute. Mississippi Code 1942 Annotated section 2013 (1956).
In Fairman v. State, 83 Nev. 137, 143, 425 P.2d 342, 345 (1967) the Supreme Court of Nevada said: "Possession of the marijuana is a necessarily included offense when incident to the sale as shown by the facts of this case and only one conviction can be had for either the sale or possession, but not both."
The general rule is stated in 22 C.J.S. Criminal Law § 295(3) (1961) in a headnote as follows:
An accused may not properly be prosecuted for two offenses with relation to narcotics where both arise out of the same transaction and one is necessarily incident to the other, but where the same transaction gives rise to separate and distinct offenses, a prosecution for one will not ordinarily bar prosecution for the others.
In Lenoir v. State, 237 Miss. 620, 623-624, 115 So.2d 731, 732 (1959), this Court said:
It is a general rule that where a statute denounces as an offense two or more distinctive acts, things, or transactions enumerated therein in the disjunctive, the whole may be charged conjunctively and the defendant found guilty of either one. Section 1798, Vol. 4, Wharton's Criminal Law and Procedure; 27 Am. Jur., Indictment and Information, Sec. 104. This Court seems to have followed this general rule in cases involving other statutes. Cf. State v. Sam, 154 Miss. 14, 122 So. 101; Sauer v. State, 166 Miss. 507, 144 So. 225; Turner v. State, 177 Miss. 272, 171 So. 21; Brady v. State, 128 Miss. 575, 91 So. 277; State v. Clark, 97 Miss. 806, 52 So. 691; Coleman v. State, 94 Miss. 860, 48 So. 181, and West v. State, Miss., 49 So.2d 271.
The insertion in the indictment of the statement that appellant had in his "possession" *448 was not essential to the charge that he produced the marijuana. It neither added to nor detracted from the charge of production and must be categorized as one of the "lesser included offenses." It is clear that the offense charged was the production of the specified "1,088 marijuana plants," and the language of the indictment makes it unmistakably clear that both the possession and production relate to the same 1,088 plants specifically referred to in the indictment. At worst, the insertion of the words "had in (his) possession" before "and produced" the 1,088 plants was harmless surplusage.
We have concluded that here, where in a single count indictment, possession and production of a controlled substance is charged conjunctively, such possession and production constitute aspects of a single transaction and that the possession, having been merely incidental to the production of the substance, did not constitute a charge of a separate or distinct offense. We hold, therefore, that the indictment in this case charging that appellant did possess and produce marijuana was not fatally defective.
The case against Wolf developed in this way. A neighbor informed a police officer that he had observed plants growing upon Wolf's land, which adjoined his, which the neighbor believed to be marijuana. He was told that in the absence of further information that a warrant for a search of Wolf's land could not be obtained. The neighbor returned home and, that evening, went upon Wolf's land and took a few of the plants. On a second visit to the officer the neighbor gave these plants to him. They were examined and proved to be marijuana. An affidavit for a search warrant for execution by the officers, was prepared which set out at length and in detail the facts and circumstances leading affiants to believe that marijuana was being produced and possessed by Wolf and his wife upon Wolf's land. Upon this affidavit a search warrant was duly issued and pursuant thereto Wolf's premises were searched and a crop of marijuana was found to be growing thereon, consisting of 1,088 marijuana plants.
The present prosecution is, as already stated, based upon the possession and production of those plants.
The trial court overruled appellant's motion to suppress the evidence obtained under the warrant. This action of the court is assigned as error. It is argued that the "... affidavit for Search Warrant (was) based upon information of an informant whose reliability and credibility were unknown." In support of this contention appellant cites Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
A similar argument based upon Aguilar was dealt with by the United States Fifth Circuit Court of Appeals on March 23, 1972, in United States v. Bell, 457 F.2d 1231, 1238-1239 (5th Cir.1972), as follows:
Although there is much sound and fury between the parties as to the existence of probable cause to arrest, we choose not to venture into the mostly visceral concept of probable cause, for a specter has arisen in this case that deserves to be laid to rest. It is now a well-settled and familiar concept, as enunciated by Aguilar and Spinelli, that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. See also United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of *449 reliability, a "neutral and detached magistrate" could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many informants are intimately involved with the persons informed upon and with the illegal conduct at hand, and this circumstance could also affect their credibility. None of these considerations is present in the eyewitness situation such as was present here. Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A "neutral and detached magistrate" could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon first hand knowledge. Thus we conclude that Aguilar and Spinelli requirements are limited to the informant situation only.
While it is true that the officers who executed the affidavit had not been previously acquainted with Wolf's neighbor who supplied the information, either personally or officially, and had no previous experience as to his reliability based on former tips, or otherwise, in this case the informant was an "eyewitness" to the growing of the marijuana, which he had observed simply by looking across the imaginary line separating his from Wolf's property. His statements with respect to it were supported and borne out when he took several of the plants to the police where it was identified by them as being marijuana. We conclude that the information in the hands of the officers was ample, and was sufficiently set out in detail in the affidavit, to justify a finding of probable cause and the issuance of the warrant. The trial court did not err in overruling the motion to suppress.
Finally, it is argued that appellant's motion to suppress and quash the indictment should have been sustained because the informant, who was Wolf's neighbor, and a private citizen, committed a trespass upon Wolf's land in obtaining the marijuana plants. Here appellant relies upon two California cases. The first, People v. Fierro, 236 Cal. App.2d 344, 46 Cal. Rptr. 132 (1965), was a case in which the excluded evidence had been obtained by a private citizen who was acting at the time pursuant to express and specific orders of the police directing him to enter the room occupied by the accused and to seize the contraband for the possession of which the latter was prosecuted. The second, Stapleton v. Superior Court of Los Angeles County, 70 Cal.2d 97, 73 Cal. Rptr. 575, 447 P.2d 967 (1969), involved a "joint arrest and search of an automobile" which was participated in jointly by police officers and credit card investigators. The participation in these actions of private citizens did not remove the taint of illegality from the warrantless search and arrest so as to permit the latter to testify.
In the case now before us the neighbor, a private person, not connected with the police (and in fact unknown to them previously) had observed from his own premises the marijuana growing on Wolf's adjoining land. After conversation with an officer, he went back, the evidence shows, alone and at his own election, and plucked several of the plants which he later took to the police. There was no participation by the police in any of these actions and nothing at all was done by them until after the warrant had been issued. The neighbor was acting as an "interested citizen" throughout, not as an agent or servant of the police nor at their direction.
The evidence fully supports the conclusion of the trial court that the acts of Wolf's neighbor were purely those of an interested private person, undertaken of his own volition and neither directed nor participated in by the officers. Thus it was not error for the trial court to deny the motion to suppress the evidence and quash the indictment.
*450 Other errors assigned and argued have been examined and carefully considered and are without merit.
The conviction of appellant for producing marijuana must, therefore, be affirmed. However, the sentence imposed for that offense of five years imprisonment exceeds the maximum authorized by Mississippi Code 1942 Annotated section 6831-70(a)(2) (Supp. 1971). The case will be remanded to the trial court in order that appellant may be resentenced as provided by that statute. Fisher v. State, 264 So.2d 832 (Miss. 1972) and Moore v. State, 264 So.2d 414 (Miss. 1972).
Affirmed as to conviction, remanded to trial court for resentencing.
RODGERS, P.J., and PATTERSON, ROBERTSON and SUGG, JJ., concur.