ROBERTSON, Justice:
Appellant, Edwin James Doherty, has appealed to this Court from a denial of a “Petition for Relief in the Nature of a Writ of Error Coram Nobis,” by the Circuit Court of Harrison County.
On December 7, 1955, Appellant Doherty, 17 years of age, was indicted in the Circuit Court of Harrison County on two counts of burglary and larceny. One indictment charged that on October 16, 1955, he broke into a building and stole a number of items, including 40 men’s watches, of a total value of $300.00. Doherty was charged' in the other indictment with breaking and entering a building on October 29, 1955, and stealing sport shirts, two suits, a rifle, and 21 watches, all of a total value of $400.00.
*549 In the Order of Arraignment dated December 7, 1955, the trial judge found:
“Comes the District Attorney who prosecutes for the State, and also comes the defendant in his own proper person, (and the defendant being by the Court advised as to his right to the benefit of counsel), and thereupon the defendant Edwin James Doherty being arraigned and charged upon the Indictments herein against him, charging him with the crime of Burglary and Larceny for plea thereto says he is guilty in manner and form as therein charged against him in the above styled and numbered cases. The defendant is remanded to the custody of the sheriff to await further proceedings herein.” (Emphasis added).
On December 19, 1955, Doherty was sentenced to one year in the state penitentiary on each indictment, the sentences to run concurrently. He served his sentence and was released in 1956.
On July 1, 1970, Doherty filed an Application for Post Conviction Relief in the nature of a petition for writ of error coram nobis in the Circuit Court of Harrison County. He admitted in his application that he pleaded guilty to the two charges back in December, 1955, that his conviction and sentence were not appealed, and that he served his sentence. At this late date he wanted his conviction and sentence reviewed because he alleged that he was suffering adverse collateral legal consequences from his 1955 conviction. He contended that he was an indigent back in 1955, that counsel was not appointed by the state to represent him, and that he did not voluntarily and intelligently waive appointment of counsel.
The Petition was denied by Circuit Judge Leslie B. Grant on July 13, 1970. It is interesting to note that Judge Grant was the same judge who tried and sentenced the appellant back in December, 1955.
In his brief, appellant stated his present status:
“Appellant is currently confined in the United States Penitentiary at McNeil Island, Washington, under sentence of seven and one-half (7%) years from the United States District Court for the Southern District of California.”
We do not know and Doherty does not tell us the nature of the crime for which he was sentenced. We do not know and he does not tell us what happened to him during the 14-year period from 1956 to 1970. Appellant reached this conclusion in his brief :
“The felony conviction of which appellant complains is effecting and will continue to effect him so long as he remains in the federal prison system.”
Appellant cited Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), as authority for his allegation that the question is not moot because of the possible collateral legal consequences of his 1955 conviction.
Sibron is a far cry from Doherty. Sib-ron was convicted of the unlawful possession of heroin. The heroin was taken from his person on March 9, 1965, when he was stopped and frisked under New York’s “stop-and-frisk” statute. Sibron moved before trial to suppress the heroin seized from his person by the arresting officer. After the trial court denied his motion, Sibron pleaded guilty to the charge, preserving his right to appeal the evidentiary ruling. He was sentenced to six months in jail and served his sentence before the appellate courts of New York affirmed his conviction without opinion.
In Sibron, the district attorney confessed error, conceding that the search and seizure were unreasonable and violated the Fourth Amendment. Sibron, of course, moved before trial to suppress the evidence unlawfully seized. He preserved and asserted this point promptly on appeal, and the Supreme Court of the United States rendered its opinion in 1968. Doherty waited 14 years before he opened his mouth and at *550 tempted to question his 1955 conviction based on his guilty plea.
The U. S. Supreme Court noted possible collateral consequences of Sibron’s conviction in this way:
“Without pausing to canvass the possibilities in detail, we note that New York expressly provides by statute that Sib-ron’s conviction may be used to impeach his character should he choose to put it in issue at any future criminal trial, NY Code Crim Proc § 393-c, and that it must be submitted to a trial judge for his consideration in sentencing should Sibron again be convicted of a crime, NY Code Crim Proc § 482.” 392 U.S. at 55-56, 88 S.Ct. at 1899, 20 L.Ed.2d at 930.
But it had this to say about offenses of the distant past:
“A judge or jury faced with a question of character, like a sentencing judge, may be inclined to forgive or at least discount a limited number of minor transgressions, particularly if they occurred at some time in the relatively distant past.” (Emphasis added). 392 U.S. at 56, 88 S.Ct. at 1899, 20 L.Ed.2d at 930-931.
It would appear from this language that the U. S. Supreme Court is negating any possible collateral legal consequences from old convictions in the distant past.
It would appear from the lightness of the sentence that the sentencing judge in 1955 took into consideration the youth of defendant Doherty.
Like the U. S. Supreme Court, we cannot foresee any possible collateral legal consequences from this youthful transgression of Doherty’s back in the dim, dark and distant past.
Not only was the trial judge the same in 1955 as now, but also the district attorney. We note again that the Order of Arraignment signed by Judge Leslife B. Grant on December 7, 1955, recites: “[A]nd the defendant being by the Court advised as to his right to the benefit of counsel, * * * ” It would appear that eight years before Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that Mississippi was advising defendants in non-capital cases of their right to counsel.
In affirming the decision of the trial judge denying Doherty’s petition, we heed our admonition contained in Miller v. State, 207 Miss. 156, 41 So.2d 375, app. dism., cert. den., Miller v. Wiggins, 338 U.S. 844, 70 S.Ct. 93, 94 L.Ed. 516 (1949):
“Furthermore, the Supreme Court of the United States, in Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986, [advised] that: ‘In reviewing a conviction of crime, doubts should be resolved in favor of the integrity, competence, and proper performance of their official duties by the judge and state attorney.’ ” 207 Miss. at 161, 41 So.2d at 376.
In Miller, this Court also quoted with approval from Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 291, 86 L.Ed. 166 (1941):
“In such a case we accept the determination of the triers of fact, unless it is so’ lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process.” 207 Miss. at 162, 41 So.2d at 377.
This position was reaffirmed in Thomas v. State, 247 Miss. 704, 159 So.2d 77 (1963) where this Court, citing Gordon v. State, 149 So.2d 475 (Miss., 1963), cert. den., 374 U.S. 852, 83 S.Ct. 1918, 10 L.Ed.2d 1072 (1963) held:
“[I]n reviewing a conviction of a crime, any doubts should be resolved in favor of the integrity, competence and proper performance of the official duties of the judge and prosecuting attorney, and that this Court should give effect to- all reasonable presumptions in favor of the rulings of the court below.” 247 Miss. at 712, 159 So.2d at 80.
*551 Further, in the recent case of Eaton v. United States, 408 F.2d 525 (5th Cir. 1969), it was stated:
“[I]t is, as a general rule, presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require. 31A C.J.S. Evidence § 146, at pages 322 and 325.” 408 F.2d at page 528.
The judgment of the trial court is affirmed.
Affirmed.
ETHRIDGE, C. J., and BRADY, IN-ZER and HARPER, JJ., concur.